IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

EDUARDO LAMAS LEYVA                                    PLAINTIFF

v.                  Civil No. 5:18-cv-05100

DEPUTY DYLAN PORTLOCK;                          DEFENDANTS
OFFICER CHRISTOPHER VELASCO;
SERGEANT NICKOLAS FENNELL;
OFFICER BROOKS; DEPUTY
HOWERTON; DEPUTY YATES; OFFICER
C. MCCLELLAN; OFFICER C. BEAVER;
OFFICER GRIMES; CORPORAL RICKER;
and SERGEANT BZOSKI

## OPINION

Plaintiff, Eduardo Lamas Leyva, filed this action pursuant to 42 U.S.C. §1983. He proceeds *pro se* and *in forma pauperis*. The case is before the Court for preservice screening under the provisions of the Prison Litigation Reform Act (PLRA). Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

### I. BACKGROUND

The original Complaint (ECF No. 1) did not state how each of the Defendants had violated Plaintiff's federal constitutional rights. Plaintiff was, therefore, ordered (ECF No. 4) to file an amended complaint by June 26, 2018. Plaintiff was told to utilize the Court's approved § 1983 complaint form. A copy of the form was sent to him.

Following several extensions of time due to changes in Plaintiff's address, the Amended Complaint (ECF No. 15) was filed on August 9, 2018. The Amended Complaint was not

1

submitted on the form and contained several pages written completely in Spanish. While Plaintiff indicated he spoke "very limited" English and was having a friend translate for him, it was unclear if all pages had been translated (fifteen Spanish pages versus only eight pages in English) or what precisely the situation was. The Court could not determine if all Plaintiff's allegations were fully translated. By Order (ECF No. 17) entered on August 22, 2018, Plaintiff was directed to file a Second Amended Complaint written entirely in English by September 12, 2018. The Complaint was to be verified by both the Plaintiff and the inmate translator. Plaintiff was advised that failure to obey the Order would subject the case to dismissal.

The Second Amended Complaint (ECF No. 18) was filed on September 6, 2018. The Second Amended Complaint was not submitted on the § 1983 form complaint and consists of thirty-five pages of a mix of handwritten material, incident reports, and disciplinary reports. The material is not arranged in any apparent order. The material does not even specify who Plaintiff intends to name as Defendants. The Court has therefore added as Defendants those individuals Plaintiff makes specific allegations against. Plaintiff did not verify the documents nor is there any verification, or even the name of, the translator.

From the materials submitted as the Second Amended Complaint, the following can be gleaned:

(1). On some unspecified date, Plaintiff alleges he discovered, with his regular mail, a letter that talked about an inmate snitching on another. It is not clear whether Plaintiff was the alleged "snitcher." However, this letter allegedly put the Plaintiff's life at risk as well as the lives of his family. In fact, Plaintiff maintains a family member was later assassinated because of this letter;

(2). On April 15, 2018, Plaintiff was charged with a major disciplinary after Officers Portlock and Velasco allegedly found tobacco in Plaintiff's property;

(3). On April 16, 2018, Plaintiff was issued a major disciplinary by Officer Brooks;

(4). On April 26, 2018, some of Plaintiff's property was lost when he was moved to a different pod. That same day, Plaintiff also alleges he informed Officer Velasco about the letter where death threats were made against Detainee Nicholson.[1] Officer Velasco ignored him;

(5). On May 12, 2018, Plaintiff was issued a major disciplinary by Deputy N. Howerton and Deputy Yates after Plaintiff refused to get out of the shower;

(6). Officer C. McClellan harassed Plaintiff, was racist towards him, and threatened to put Plaintiff in the "hole" if he continued submitting anything on the kiosk;

(7). On an unspecified number of occasions, Plaintiff went sixty-hours without a shower;

(8). In the early morning on some unspecified date(s), Officer C. Beaver harassed the Plaintiff by shining a light on him until he woke up;

(9). On a single occasion, when it was made to look like Plaintiff refused his meal, Officer Grimes asked Plaintiff if he wanted his food. Plaintiff answered affirmatively but states he did not get the food until later and then without the drink;[2]

(10). There were times he was not allowed access to the kiosk, when his grievances were blocked or ignored, and when he was asked to submit his grievances in English even though part of the staff was bi-lingual; and

(11). Plaintiff asserts official capacity claims against Washington County.

---

[1] This appears to be the same letter mentioned in item one.
[2] Plaintiff also provides a handwritten copy of a grievance he wrote on July 21, 2018, about Officer C. Beaver threatening him if he did not sign a form indicating that he had received certain medication. (ECF No. 18 at 3). Plaintiff cannot add to this case claims that arose after the filing of case. This is true because he could not have exhausted his administrative remedies with respect to this claim prior to the filing of this case on June 5, 2018. The Prison Litigation Reform Act requires that remedies be exhausted prior to suit being filed. 42 U.S.C. § 1997e(a).

## II. LEGAL STANDARD

Under the PLRA, the Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or, (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (*quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## III. DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

**Claim One—the Letter**

Plaintiff alleges he received in his regular mail a letter that contained a threat aimed at an inmate who acted as a snitch. Plaintiff does not allege he was named as the inmate who snitched. In fact, he refers to the letter later in the complaint as asserting a threat against Inmate Nicholson. Plaintiff does not indicate who sent the letter, if he knew, or describe the contents of the letter. He does allege he was involved in at least one altercation because of the letter, was put into pods with inmates who were associated in some unknown way with the letter, and that he advised several of the Defendants of the existence of the letter.

Plaintiff has not alleged that any of the named Defendants were responsible for placing the letter with his mail or that they were even aware of the existence of the letter until after Plaintiff received it. *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights"). The Court will therefore treat this claim as a failure to protect claim.

"[T]he Eighth Amendment . . . imposes on jailors an obligation to protect inmates from more generalized harms such as assault by other inmates." *Hott v. Hennepin Cty, Minn.*, 260 F.3d 901, 906 (8th Cir. 2001). To make out a failure to protect claim, Plaintiff must prove that one or more of the Defendants were deliberately indifferent to a substantial risk of serious harm. *Id.* "[I]t does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Doe v. Washington Cty.*, 150 F.3d 920, 923 (8th Cir. 1998)(internal quotation marks and citation omitted). It has been recognized that an inmate identified as a snitch or considered a snitch "is in danger of being assaulted or killed by other inmates." *Irving v. Dormire*, 59 F.3d 441, 451 (8th Cir. 2008).

The Complaint contains no factual allegations sufficient to assert a plausible failure to protect claim against any of the named Defendants. Plaintiff does not allege he was the inmate identified as the snitch; that the letter came from someone inside the facility; that other inmates in general were aware of the contents of the letter; that other inmates knew Plaintiff had been identified as a snitch; or that there existed a situation inside the jail that constituted an excessive risk to inmate health and safety in general. Plaintiff's allegation that his nephew was assassinated at some other location because of the letter does nothing to establish a dangerous situation existed at the detention center.

To the extent the letter was aimed at another inmate or members of his family, Plaintiff has no standing to bring a claim on behalf of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975)(A Plaintiff must assert his own legal rights, rather than the rights of third parties, to have standing to sue).

**Claim Two—April 15th Disciplinary Charge**

On April 15, 2018, based on information received, Officers Portlock and Velasco, Corporal Ricker, and Sergeant Bzoski, searched the property of the Plaintiff and Inmate Gass. Contraband was found in both inmates' property. What appeared to be tobacco was found in Plaintiff's property. Plaintiff was issued a major disciplinary for: (1) possession of tobacco; and (2) having property in his possession that was altered from its original form. (ECF No. 18 at 13). A hearing was scheduled for April 30th. (ECF No. 18 at 19).

Due Process requires that an inmate be given certain protections when given a disciplinary charge. *Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974). These requirements are: (1) advance written notice of the disciplinary charges at least 24 hours before the disciplinary hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses

and present documentary evidence in his defense; and (3) a written statement from an impartial decisionmaker identifying the evidence relied on and the reasons for the disciplinary action. *Id.* Due Process is satisfied if "some evidence" supports the disciplinary decision. *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985).

There are no factual allegations in the Second Amended Complaint suggesting that Plaintiff was denied Due Process in connection with these charges. In fact, he has included the notice of the charges and the notice of the hearing he received. To the extent Plaintiff may be claiming the disciplinary charges were false, this does not by itself violate the Constitution. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989)(The filing of a false disciplinary charge against an inmate is not actionable under § 1983 unless filed in retaliation for the inmate's exercise of a constitutional right). Plaintiff has not alleged that Officers Portlock and Velasco, Corporal Ricker, or Sergeant Bzoski were acting in retaliation for Plaintiff's exercise of his constitutional rights. No plausible claim is stated.

Plaintiff also asserts he was not provided an attorney in connection with the disciplinary hearing. This is not one of the Due Process rights provided for in *Wolff*. *See Wolff*, 418 U.S. at 570 (no right to either retained or appointed counsel in disciplinary hearings).

**Claim Three—April 16th Disciplinary Charge**

On April 16, 2018, Deputy Brooks reported that Plaintiff approached him asking about missing personal items from another block. Deputy Brooks stated he could not do anything about it at the time because he was passing out food. Plaintiff asked to speak to a sergeant and was told to put a request into the kiosk. In response, Plaintiff threw his drink at the trustees' feet and asked if that would get a sergeant down there. Deputy Brooks instructed Plaintiff to leave the area due to his disrespectful manner. Plaintiff then went to throw his tray away and

7

after the tray hit the floor kicked it at Deputy Brooks' feet. Deputy Brooks instructed Plaintiff to pack his belongings because he was being relocated. Plaintiff responded: "You go pack it." Plaintiff refused a second time to pack his belongings. Plaintiff was moved to a different area. Deputy Brooks gathered Plaintiff's belongings. When Deputy Brooks attempted to hand Plaintiff his mattress, Plaintiff kicked it. Plaintiff was handcuffed and taken to the hallway by Deputy Brooks and Deputy Fennel.

Plaintiff was charged with: (1) failure to obey verbal orders of staff; (2) throwing/attempting to throw substances toward or upon another; (3) breaking into/disruption of a detainee line or interfering with operations; and (4) making profane/obscene gestures to a staff member. (ECF No. 18 at 17). A hearing was scheduled for April 30th. (ECF No. 18 at 20).

Once again, Plaintiff makes no allegations that he was denied Due Process in connection with these charges. He makes no allegations that the facts stated in the disciplinary report are false or that Deputy Brooks was acting in retaliation for Plaintiff's having exercised a constitutional right. No claim is stated against Deputy Brooks.

**Claim Four—April 26th Lost Property & Letter**

Plaintiff alleges that on April 26, 2018, some unspecified detention center personnel "caused" part of his property, including his documents, to be lost when he was moved to a different pod. (ECF No. 18 at 4). He makes no allegations that the missing property was intentionally taken by any of the named defendants. *See Sellers by and through Sellers v. Baer*, 28 F.3d 895, 902-03 (8th Cir.1994)(Inadvertence, negligence, or even gross negligence is insufficient to state a claim under § 1983). Moreover, even if the deprivation was intentional, no claim is stated because Plaintiff has adequate post-deprivation remedies. *See Hudson v.*

*Palmer*, 468 U.S. 517, 533 (1984)(intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available); *Barnett v. Centoni*, 31 F.3d 813 (9th Cir. 1994)(negligent or intentional deprivation of prisoner's property fails to state claim under § 1983 if state has adequate post-deprivation remedy); *Elliot v. Hurst*, 307 Ark. 134, 817 S.W.2d 877, 880 (1991)(cause of action for conversion lies where distinct act of dominion is exerted over property in denial of owner's right).

Next, Plaintiff alleges that he told Officer Velasco about "the letter where death thre[a]ts were made" against Detainee Nicholson. (ECF No. 18 at 4). Plaintiff states Officer Velasco ignored him. These allegations do not state a claim that Plaintiff's constitutional rights were violated in anyway.

**Claim Five—May 12th Disciplinary Charge**

Plaintiff was issued a major disciplinary by Deputy N. Howerton and Deputy Yates after he refused to get out of the shower. (ECF No. 18 at 31). Plaintiff was charged with: (1) interfering with the taking of count; and (2) failure to obey verbal orders of staff. (*Id.* at 32). A hearing was scheduled for May 29th. (*Id.* at 33). The hearing was held as scheduled and Plaintiff was found not guilty of interfering with count because an officer confirmed Plaintiff had asked for soap and shampoo that morning and the officer simply forgot. It was concluded this caused Plaintiff to not be able to shower in a timely manner. He was found guilty, however, of refusing to obey an order of the officers. Plaintiff had been ordered out of the shower and had to be removed bodily.

Plaintiff does not deny the facts as stated in the incident report are correct. Plaintiff does not allege that he failed to receive notice of the charge, notice of a hearing, the hearing, or a decision by an impartial decision maker. In fact, Plaintiff has incorporated proof that he did

receive these protections. Nor has Plaintiff alleged Deputies Howerton and Yates were acting in retaliation for Plaintiff's having exercised a constitutional right. No claim is stated against Deputies Howerton and Yates.

**Count Six—Harassment, Racist Comments, & Threats**

Plaintiff alleges that while he was being seen by the nurse, Officer C. McClellan was harassing him. (ECF No. 18 at 22). Specifically, Plaintiff alleges that Officer McClellan was racist towards him and threatened to put Plaintiff in the "hole" if he continued submitting anything on the kiosk."

"Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim. The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *King v. Olmsted County*, 117 F.3d 1065, 1067 (8th Cir. 1997). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993)(inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987)(verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); *Martin v. Sargent*, 780 F.2d 1334, 1338-1339 (8th Cir. 1985)(being called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985)(use of racially offensive language in dealing with a prisoner does not, by itself, state a claim).

"To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action

against him that would chill a person of ordinary firmness for continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).

While Plaintiff asserts that Officer McClellan threatened to retaliate against Plaintiff if he continued to utilize the kiosk, presumably for asserting grievances, there are no other factual allegations. *See Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010)("A prisoner's right under the First Amendment to petition for redress of grievances under a prison's grievance procedures is clearly established in this court"). Plaintiff does not allege that Officer McClellan took any adverse action against him or that Plaintiff was afraid to utilize the kiosk or exercise his other constitutional rights as a result; with respect to the latter, any such allegation is belied by the documents submitted by Plaintiff.

Despite still being held at the Washington County Detention Center, the documents submitted by the Plaintiff show he has submitted multiple grievances and/or requests on the kiosk. He also filed this lawsuit and has continued to file documents in the lawsuit. Clearly, his exercise of his constitutional rights has not been chilled. No plausible action is stated here because Plaintiff has not alleged any facts suggesting the existence of an adverse action. *See e.g., King v. Lombardi*, No. 4:17-cv-742, 2017 WL 2277190, *3 (E.D. Ark. May 25, 2017)(no plausible claim of retaliation stated when no adverse action alleged on Defendant's part).

**Claim Seven—No Shower for 60 Hours**

Plaintiff alleges that on an unspecified number of occasions he was left for up to sixty hours without a shower. (ECF No. 18 at 29). To prevail on a conditions of confinement claim, Plaintiff must show: (1) the condition was serious enough to deprive him of the minimal civilized measures of life's necessities, or to constitute a substantial risk of serious harm; and (2) officials

were deliberately indifferent to his health and safety. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

In this case, Plaintiff's only allegation is that there were an unspecified number of occasions when he was denied a shower for up to sixty hours. Plaintiff does not allege that he was routinely denied showers; that he did not have access to other hygiene supplies; or that there was an immediate danger to his health.

In general, courts have held that the temporary denial of bedding, exercise, clothes, showers, or hygiene products is not unconstitutional. *See e.g., O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 83-8 (8th Cir. 1996)(four days without underwear, blankets, mattress, exercise and visits not a constitutional violation). Further, there is no bright line constitutional rule as to the number of showers an inmate must have; nor is there a specific time frame within which showers must be provided. *See e.g., Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995)(four days without clothes, mattress, running water, bedding, mail, hot food, and hygienic supplies not a constitutional violation); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003)(two week suspension of shower privileges does not "suffice as a denial of 'basic hygienic needs'"); *Cosby v. Purkett*, 782 F. Supp. 1324, 1329 (E.D. Mo. 1992)(no constitutional violation where inmates only allowed to shower once every seventy-two hours); *Cf. Scott v. Carpenter*, 24 Fed. Appx. 645, 648 (8th Cir. 2001)(No Eighth Amendment claim where disabled inmate who received only fifteen showers over six months and once went twenty-eight days without a shower rarely took advantage of opportunity to shower. Officials offered, upon request, a shower or warm water for his basin).

Here, Plaintiff alleges only that on occasion he was denied a shower for up to sixty hours. No plausible constitutional violation has been stated.

Further, Plaintiff does not mention any of the Defendants in connection with the denial of shower claim. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Clemmons,* 477 F.3d at 967 (citation omitted). Plaintiff's allegations fail to state a plausible claim.

**Claim Eight—Shining Light/Harassment**

Plaintiff alleges that Officer Beaver harassed him by, for example, shining a light on his face in the early morning hours until he woke up. As discussed above, claims of general harassment do not state a constitutional claim. *McDowell*, 990 F.2d at 434. Nor does the occasional shining of a light in Plaintiff's face during a bed check deprive Plaintiff of the minimal civilized measures of life's necessities.

**Claim Nine—Food**

Plaintiff alleges that on a single occasion he was denied a spoon at breakfast. Later that same day, Plaintiff alleges it was made to look like he did not want to eat or had refused his tray. Plaintiff suspected this was because he had been making a lot of "noise" that day. Officer Grimes then asked Plaintiff if he wanted his food and Plaintiff responded affirmatively. Plaintiff did receive his tray but not until later and then without the drink.

No plausible claim is stated. This alleged deprivation was not serious enough to deprive Plaintiff of the minimal civilized measures of life's necessities, or to constitute a substantial risk of serious harm to his health or safety. *Smith*, 87 F.3d at 268.

**Claim Ten—Grievance Procedure**

Plaintiff has alleged there were times he was not allowed to use the kiosk to submit grievances, or that his grievances were blocked or ignored, or that he was told to submit his grievances in English even though some of the staff was bilingual. "Inmates do not have a

constitutionally protected right to a grievance procedure. Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . . grievance procedure is not actionable under § 1983." *Ashann–Ra v. Commonwealth of Virginia,* 112 F.Supp.2d 559, 569 (W.D. Va. 2000) (citations omitted); *see also Lombolt v. Holder,* 287 F.3d 683, 684 (8th Cir. 2002) (denial of grievances does not state a substantive constitutional claim); *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1993) ("no constitutional right was violated by the defendants' failure, if any, to process all of the grievances [Plaintiff] submitted for consideration). "Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." *Blagman v. White*, 112 F. Supp. 2d 534, 542 (E.D. Va. 2000) (*citing Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991)). A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available." *Id.* (citation omitted). "[A]ny alleged due process violation arising from the alleged failure to investigate . . . grievances is indisputably meritless." *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005).

With respect to the language barrier, Plaintiff does not allege there was any prohibition on his asking for assistance in submitting his grievances in English. It is quite clear from Plaintiff's materials that the language barrier did not prevent him from submitting grievances.

"To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *White v. Kautzky,* 494 F.3d 677, 680 (8th Cir. 2007). Here, Plaintiff was able to obtain a § 1983 form and submit it successfully to this Court. He has not alleged he was unable to file any claims with this or any

other court. He has, therefore, failed to state a plausible claim for denial of meaningful access to the courts.

### Claim Eleven--Official Capacity Claims

To the extent Plaintiff is attempting to assert official capacity claims, they are the equivalent of claims against Washington County. "Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Grayson v. Ross*, 454 F.3d 802, 810-811 (8th Cir. 2006) (*quoting Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Plaintiff has not alleged the existence of any custom or policy of Washington County that was a moving force behind the alleged constitutional violations.

## IV. CONCLUSION

The claims asserted are subject to dismissal because they are frivolous or fail to state claims upon which relief may be granted. Therefore, this case is **DISMISSED WITHOUT PREJUDICE.** *See* 28 U.S.C. § 1915(e)(2)(B)(i-ii).

This dismissal constitutes a strike within the meaning of the Prison Litigation Reform Act. The **Clerk** is directed to enter a § 1915(g) strike flag on this case.

IT IS SO ORDERED on this 20th day of September 2018.

/s/ P.K. Holmes, III
P. K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE

15